UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

COURCHEVEL 1850 LLC,

                Plaintiff,

      -against-

ISAAC STERN et al.,

                Defendants.

**MEMORANDUM & ORDER**

**17-CV-1794 (NGG) (JO)**

-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Isaac Stern moves to dismiss this mortgage-foreclosure action on the grounds that Plaintiff Courchevel 1850 LLC ("Courchevel 1850") never served him with notice of the impending foreclosure, as he claims Section 1304 of the New York Real Property Actions and Proceedings Law ("RPAPL") requires. (Mot. to Dismiss (Dkt. 104); Mem. in Supp. of Mot. to Dismiss ("Stern Mem.") (Dkt. 104-6).) For the reasons that follow, the motion is GRANTED.

I.    **BACKGROUND**

The following statement of facts is taken from Plaintiff's complaint (Dkt. 1), the well-pleaded allegations of which the court accepts as true for purposes of this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In 2005, Stern borrowed $190,000 from National City Bank under a line of credit secured by a mortgage on real property located at 355A Halsey Street in Brooklyn (the "Property"). (Compl. ¶¶ 1, 50-51; see also Note (Dkt. 1-2); Mortgage (Dkt. 1-3).) The terms of the line of credit were reflected in an "equity reserve agreement," which the court refers to as the "Note" for the sake of brevity. Several years later, National City Bank was acquired by PNC Bank, see The PNC Financial Services Group, Annual Report (Form 10-K) (Mar. 11, 2010) at 2, 25, which

1

thereafter endorsed the Note to non-party American Servicing Group, LLC (Compl. ¶ 54). After several further assignments, the Note wound up in Plaintiff's hands. (Id. ¶¶ 55-57.)

Stern failed to make a payment due "on the first day of June 22, 2005" [sic] and remains in default on the Note. (Id. ¶ 58.) On December 15, 2016, Plaintiff notified Stern that it intended to treat the entire balance outstanding under the Note as immediately due, and gave him 30 days to cure his default, as the Mortgage required. (Id. ¶ 59.) Plaintiff did not, however, send Stern a notice that he was at risk of foreclosure because Stern no longer owned or resided at the Property and so, in Plaintiff's view, was not entitled to such notice under RPAPL § 1304. (Id. ¶ 60.) As the parties appear to agree, sometime after he executed the Note and Mortgage but before Plaintiff instituted this action, Stern sold the Property, which was subdivided into four units that now belong to new owners. (Compl. ¶¶ 7-16; Affirm. of Isaac Stern ("Stern Affirm.") (Dkt. 104-2) ¶ 3; Pl. Mem. in Opp'n to Mot. to Dismiss ("Pl. Mem.") (Dkt. 104-7) at 5.)

On March 30, 2017, after Stern failed to pay off the Note, Plaintiff commenced this action to foreclose on the Mortgage, naming as defendants Stern, the new owners of the subdivided Property, several financial institutions that hold mortgages allegedly junior to the Mortgage, and several government agencies and creditors alleged to hold liens on the Property. (Compl. ¶¶ 7-44.) Stern then moved to dismiss the complaint on the grounds that Plaintiff had not served him with a pre-foreclosure notice in accordance with RPAPL § 1304. (Stern Mem. at 1; Stern Affirm. ¶ 3.)

## II. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's complaint. Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (per curiam). "To survive a motion to dismiss, a complaint must contain sufficient well-pleaded factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[1] When considering a Rule 12(b)(6) motion, the court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Id.; ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). On a Rule 12(b)(6) motion, the court's review is generally limited to the allegations of the complaint, as well as "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002), and "matters subject to judicial notice," N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017).

## III. DISCUSSION

This motion turns on a discrete question of law. Under New York law, "[p]roper service of RPAPL [§] 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction with this condition." Deutsche Bank Nat'l Tr. Co. v. Spanos, 961 N.Y.S.2d 200, 202 (App. Div. 2013) (quoting Aurora Loan Servs., LLC v. Weisblum, 923 N.Y.S.2d 609, 616 (App. Div. 2011)). Does a plaintiff carry that burden at the pleading stage by alleging that it was not required to serve RPAPL § 1304 notice on the borrower because he no longer owned or resided at the subject property? The court answers this question in the negative: In the court's view, RPAPL § 1304 requires that pre-foreclosure notice to be sent to the borrower of what is at

---

[1] Plaintiff asserts that a Rule 12(b)(6) motion may be granted only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (Pl. Mem. in Opp'n to Mot. to Dismiss ("Pl. Opp'n") (Dkt. 104-8) at 3 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).) After Twombly and Iqbal, this "no set of facts" pleading standard is no longer the law. See Stephens v. City of Tarrant, No. 16-CV-274, 2017 WL 34829, at *2 (N.D. Ala. Jan. 4, 2017) ("The Supreme Court clearly abrogated this standard in May of 2007, over [eleven] years ago. Plaintiff's counsel have no excuse for quoting it as current law, and doing so . . . undermines the credibility of their legal arguments.").

3

origination a "home loan," even if the borrower subsequently moves out of the property securing the loan.

The court begins with some background on RPAPL § 1304. "In response to the mortgage foreclosure crisis, New York enacted the Foreclosure Prevention and Responsible Lending Act ('FPRLA'), which provides a series of legal protections and foreclosure prevention opportunities to homeowners at risk of losing their homes." Avail Holding LLC, v. Ramos, No. 15-CV-7068 (NGG), 2017 WL 979027, at *2 (E.D.N.Y. Mar. 10, 2017) (citing 2008 N.Y. Sess. Law ch. 472 (S. 8143-A)). Among these protections is the requirement, codified at RPAPL § 1304, that a lender or mortgage servicer provide the borrower of a "subprime" or "non-traditional home loan" with certain prescribed notices at least 90 days before initiating mortgage foreclosure or other legal action with respect to the loan. 2008 N.Y. Sess. Law ch. 472 (S. 8143–A), § 2. As the bill's sponsor explained, the purpose of the notice was to "urge[] borrowers to work with their lender or a housing counseling agency to address their situation." Introducer's Mem., N.Y. Bill Jacket, 2008 S.B. 8143, ch. 472, at 6; see also Aurora Loan Servs., 923 N.Y.S.2d at 617 (noting that the "legislative history [of RPAPL § 1304] noted a typical lack of communication between distressed homeowners and their lenders prior to commencement of litigation, leading to needless foreclosure proceedings"). One year later, the New York State Legislature expanded RPAPL § 1304 to apply to all "home loan[s]," not just subprime or non-traditional loans. 2009 N.Y. Sess. Law ch. 507 (S. 66007), § 1-a; see Deutsche Bank Nat. Trust, 961 N.Y.S.2d at 201.

Under New York law, a mortgagee must properly serve an RPAPL § 1304 notice before bringing an action to foreclose on a mortgage securing a qualifying "home loan." See Aurora Loan Servs., LLC v. Komarovsky, 58 N.Y.S.3d 96, 100 (App. Div. 2017). When a lender, assignee, or mortgage servicer fails to demonstrate strict compliance with RPAPL § 1304, its

4

foreclosure action must be dismissed. Weisblum, 923 N.Y.S.2d at 616; First Nat'l Bank of Chi. v. Silver, 899 N.Y.S.2d 256, 259-62 (App. Div. 2000); see also In re Gill, 529 B.R. 31, 41 (Bankr. W.D.N.Y. 2015) ("New York Courts routinely dismiss foreclosure proceedings where a mortgage lender does not provide notice in strict compliance with the RPAPL § 1304.").

With that background in mind, the court turns to the interpretive problem raised in this case. At the time Stern executed the Note and Mortgage, he resided at the Property, which was described in the recorded Mortgage as a single-family dwelling. (Mortgage at 2, 7-8.)[2] By the time Plaintiff commenced this action, however, Stern no longer resided at the Property. (Compl. ¶ 60.) Plaintiff does not allege that it served an RPAPL § 1304 notice on Stern before bringing this action, but contends instead that no such notice was required because Stern no longer resided at or owned the Property at the time. (Id.) The question before the court, then, is whether RPAPL § 1304 requires service of a pre-foreclosure notice on a "borrower" who no longer resides at the property securing the defaulted loan.

To answer this question, the court looks to New York law. Because the New York Court of Appeals has not answered this question, the court must "carefully . . . predict how the [New York Court of Appeals] would resolve the uncertainty or ambiguity" in the interpretation of RPAPL § 1304. Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994). To make such a prediction, the court may consider "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, federal cases which construe

---

[2] Because Plaintiff attached this document to its complaint, the court may consider it in deciding this motion to dismiss. See Chambers, 282 F.3d at 152. While there is some discrepancy between the Mortgage and Stern's affirmation regarding whether the Property was a one- or two-family residence as of 2005 (compare Mortgage at 7-8, with Stern Affirm. ¶ 3), this discrepancy is immaterial for purposes of the motion to dismiss. See RPAPL § 1304(6).

the state statute, scholarly works[,] and any other reliable data tending to indicate how the New York Court of Appeals would resolve the issue." Id. (internal quotation marks and citation omitted). Where the state's intermediate courts have decided a question, that decision is authoritative and must be followed "unless [the court] find[s] persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999). Although state trial-court rulings may be persuasive as to what state law is, they are not binding on this court. See Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 399 (2d Cir. 2001).

The court begins with the plain meaning of RPAPL § 1304. See Am. Transit. Ins. Co. v. Sartor, 814 N.E.2d 1189, 1192 (N.Y. 2004) ("The starting point in any case of statutory interpretation must, of course, always be the language itself, giving effect to its plain meaning."). At the time Plaintiff filed this suit, RPAPL § 1304(1), which prescribes the notice that must be provided to a borrower at least 90 days before instituting foreclosure or certain other legal proceedings against the borrower, provided in relevant part as follows:

> Notwithstanding any other provision of law, with regard to a home loan, at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, or borrowers at the property address and any other address of record, including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower in at least fourteen-point type which shall include the following: [text of required notice omitted].

RPAPL § 1304(1) (2016).[3] This 90-day notice is thus required only before taking legal action "with regard to a home loan." Id. At the time (as now), RPAPL § 1304 defined "home loan" as a loan meeting four requirements:

---

[3] The New York State Legislature has since amended RPAPL § 1304 twice. See 2018 N.Y. Sess. Law ch. 58 (A. 9508-C), pt. HH, §§ 1, 3-6; 2017 N.Y. Sess. Law ch. 58 (S. 2008C), pt. FF, § 1.

> (i) The borrower is a natural person;
>
> (ii) The debt is incurred by the borrower primarily for personal, family, or household purposes;
>
> (iii) The loan is secured by a mortgage or deed of trust on real estate improved by a one to four family dwelling, or a condominium unit, in either case, used or occupied, or intended to be used or occupied wholly or partly, as the home or residence of one or more persons and which is or will be occupied by the borrower as the borrower's principal dwelling; and
>
> (iv) The property is located in this state.

RPAPL § 1304(6)(a)(1) (2016).

In isolation, these provisions would appear to support Plaintiff's contention that RPAPL § 1304 only "applies to mortgagors whose primary residence is the mortgaged property." (Pl. Mem. at 5.) After all, if the borrower no longer resides at the property securing the mortgage, then it would seem that the loan is not "secured by a mortgage . . . on real estate . . . [that] is or will be occupied by the borrower as the borrower's principal dwelling." See id. § 1304(6)(a)(1)(iii). Several courts in this district appear to have adopted Plaintiff's interpretation of the statute. See Gustavia Home, LLC v. Rutty, No. 16-CV-2823 (BMC), 2018 WL 2198742, at *4 (E.D.N.Y. May 14, 2018); CIT Bank N.A. v. Elliott, No. 15-CV-4395 (JS), 2018 WL 1701947, at *11 (E.D.N.Y. Mar. 31, 2018); W. Coast 2014-7, LLC v. Tolson, No. 15-CV-6306 (ADS), 2017 WL 3405517, at *7 (E.D.N.Y. Aug. 7, 2017); Gustavia Home, LLC v. Rutty, No. 16-CV-2823 (BMC), 2017 WL 354206, at *3 (E.D.N.Y. Jan. 24, 2017), vacated and remanded on other grounds, 720 F. App'x 27 (2d Cir. 2017) (summary order); Gustavia Home, LLC v. Rice, No. 16-CV-2353 (BMC), 2016 WL 6683473, at *2 (E.D.N.Y. Nov. 14, 2016). As the court will explain, however, when read as a whole, RPAPL § 1304 requires pre-foreclosure notice to a borrower even when that borrower no longer occupies the property in question as his or her primary residence.

7

As an initial matter, the court notes that RPAPL § 1304(6) is ambiguous about when a loan qualifies a "home loan"—at origination, at the time foreclosure proceedings commence, or both. One aspect of the definition of "home loan"—the purposes for which the borrower incurred the debt— clearly depends on the borrower's intent and conduct at the time the loan was originated. See RPAPL § 1304(6)(a)(1)(ii). Other aspects of the definition—whether the borrower is a natural person and the type of property securing the loan—could be analyzed, however, based on the facts as they existed either at origination or at the time foreclosure proceedings begin. See RPAPL § 1304(6)(a)(1)(i), (iii). The statute thus does not answer whether a loan that qualifies as a "home loan" at origination ceases to be a "home loan" if these requirements cease to be met in the future—for example, if the original borrower dies or if he or she moves out of the property securing the loan. Nor have New York State courts authoritatively answered this question. Cf. HSBC Bank USA, N.A. v. Ozcan, 64 N.Y.S.3d 38, 41-42 (App. Div. 2017) (holding that a loan did not qualify as a home loan because "the defendant did not reside at the property at the time he signed the mortgage or at the time the action was commenced," and that, in any event, the mortgagee provided sufficient evidence that it had provided RPAPL § 1304 notice to the borrower).

The text of RPAPL § 1304 as a whole resolves this ambiguity in Stern's favor. Cf. N.Y. Stat. § 97 ("A statute . . . is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent."); id. § 98 ("All parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof."). This is because two other provisions of this statute would make little sense if a loan ceased to be a

"home loan" (and thus ceased to trigger RPAPL § 1304's notice requirement) once the borrower no longer resided at the property securing the loan.

The first is RPAPL § 1304(3). At the time Plaintiff filed suit, this subsection of the statute provided as follows:

> The ninety[-]day period specified in the notice contained in subdivision one of this section shall not apply, or shall cease to apply, . . . if the borrower no longer occupies the residence as the borrower's principal dwelling. Nothing herein shall relieve the lender, assignee or mortgage loan servicer of the obligation to send such notice, which notice shall be a condition precedent to commencing a foreclosure proceeding.

RPAPL § 1304(3) (2016).[4] Under the first sentence block-quoted above, a mortgagee need not wait 90 days after giving RPAPL § 1304 notice before instituting foreclosure proceedings. RPAPL § 1304(3). The second sentence makes clear, however, that even though the 90-day notice period does not apply, the mortgagee is not excused from the basic requirement that it provide notice to the mortgagor, which remains "a condition precedent to commencing a foreclosure proceeding." Id. Thus, "the plain language of [this] exception only serves to eliminate the 90-day notice period; it does not relieve a mortgagee of its obligation to comply with the other mandatory provisions of RPAPL § 1304." In re Gill, 529 B.R. at 39; see also Deutsche Bank Nat'l Trust Co. v. Martinez, No. 24814/2011, 2016 N.Y. Misc. LEXIS 4083, at *16 (Sup. Ct. Oct. 17, 2016) ("The notice and the 90-day period required by RPAPL [§] 1304 are recognized by the Legislature to be distinct concepts. . . . RPAPL [§] 1304(3) does not obviate the need to serve a notice, but rather[] permits the shortening of the 90-day period for service under certain described circumstances."). Plaintiff's reading of RPAPL § 1304 fails to account

---

[4] As amended, this provision now also requires the provision of certain notices with respect to "reverse mortgage home loan[s]." See RPAPL § 1304(3); see also id. § 1304(1-a). These amendments do not affect the effect of this provision on the question before the court.

for this position, and Plaintiff offers no response to Stern's arguments on this point. (Compare Stern Mem. at 2-3, and Reply Mem. in Support of the Mot. to Dismiss (Dkt. 104-8) at 2-3, with Pl. Mem.)

The second pertinent provision is RPAPL § 1304(2), which provided then, as now, in relevant part that the required notice "shall be sent . . . to the borrower, by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." (emphasis added). If RPAPL § 1304 notice were only required if the borrower still resided at the mortgaged property, then much of this language would be superfluous, as "the last known address of the borrower" would presumably be the same as "the residence that is the subject of the mortgage" and the address of "the borrower." See id. It would make little sense for the statute to require notice to be sent to the borrower, his last known address, and the mortgaged residence if, in any case in which RPAPL § 1304 notice was required, those addresses would all be the same. Stern's contrary interpretation, however, gives these clauses effect, insofar as it contemplates the possibility that the borrower might not reside at the mortgaged property. See id. Under New York law governing the interpretation of statutes, such a reading is therefore preferred. See N.Y. Stat. § 231 ("In the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning.").

Prior to a 2016 amendment, RPAPL § 1304(2) even more specifically contemplated that a borrower might not live at the property securing the loan in question. See RPAPL § 1304(2) (2015) ("Such notice shall be sent by such lender, assignee or mortgage loan servicer to the borrower, by registered or certified mail and also by first-class mail to the last known address of

the borrower and <u>if different</u>, to the residence that is the subject of the mortgage." (emphasis added)). In 2016, the New York State Legislature struck the phrase "if different" from this provision. 2016 N.Y. Sess. Law ch. 73 (S. 8159) §§ 6, 7. Although the court strives to give effect to this amendment, see N.Y. Stat. § 193, it cannot see how the amendment substantively altered RPAPL § 1304(2), rather than simply cleaning up extraneous language in the statute.

Next, reading RPAPL § 1304 as requiring notice even if the borrower no longer resides at the mortgaged property also makes better sense of New York Civil Practice Law and Rules ("CPLR") 3408, which was also added as part of the FPLRA. See 2008 Sess. Law ch. 472, § 3; see also N.Y. Stat. § 97 ("[A]ll parts of an act are to be read and construed together to determine the legislative intent."). At the time Plaintiff filed suit, CPLR 3408 required a mandatory settlement conference "[i]n any residential foreclosure action involving a home loan as such term is defined in [RPAPL § 1304], <u>in which the defendant is a resident of the property subject to foreclosure</u>." N.Y. CPLR 3408(a) (2016) (emphasis added).[5] Under Plaintiff's reading of the statute, every foreclosure action "involving a home loan as such term is defined in [RPAPL § 1304]" would necessarily be one in which the mortgagor still resided in the mortgaged property, rendering the emphasized text above surplusage. As noted above, such constructions are disfavored under New York Law. See N.Y. Stat. § 231. Under Stern's reading of the statute, however, the emphasized language would have "effect and meaning," see id., in that it would make clear that a settlement conference is mandatory in state-court proceedings to foreclose on a "home loan" mortgage only if the mortgagor still resides at the property in question.

---

[5] Courts in this district have repeatedly held that Rule 16 of the Federal Rules of Civil Procedure displaces CPLR 3408, which therefore does not apply to foreclosure actions filed in federal court. See, e.g., W. Coast 2014-7, 2017 WL 3405517, at *10 (collecting cases). This statutory text is nevertheless relevant insofar as it guides the court's interpretation of RPAPL § 1304.

11

The court acknowledges that this interpretation fits somewhat awkwardly with the likely purpose of the statute. The FPRLA indicates that the general purpose of that act was to aid homeowners facing foreclosure. See, e.g., Weisblum, 923 N.Y.S.2d at 617; Letter from Sen. Hugh T. Farley to Kristin Rosenstein, Leg. Sec'y's Off. (July 31, 2008) ("Farley Ltr."), N.Y. Bill Jacket, 2008 S.B. 8143, ch. 472, at 5, 5-6; Introducer's Mem., N.Y. Bill Jacket, 2008 S.B. 8143, ch. 472, at 7, 7 ("This bill seeks to address the mortgage foreclosure crisis in the state by . . . providing additional protections and foreclosure prevention opportunities for homeowners at risk of losing their homes . . . ." (emphasis added)). It strikes the court as somewhat unlikely that the New York State Legislature would have anticipated that the FRPLA might help borrowers like Stern, who have not resided in the mortgaged property for years. See W. Coast 2014-7, 2017 WL 3405517, at *8-9. The legislative history is hardly clear on this point, however, see, e.g., Farley Ltr. at 6 (referring to the beneficiaries of RPAPL § 1304 as "borrowers," not "homeowners"), and in any event, there is no need to consult legislative history where, as here, the meaning of the statute itself is clear, see N.Y. Stat. § 120.

* * *

Under RPAPL § 1304, a party seeking to foreclose on a mortgage related to a "home loan" must provide certain notices to the borrower before doing so. The question before the court is whether a loan ceases to be a "home loan," for purposes of RPAPL § 1304, when the borrower no longer occupies the property securing the loan as his or her primary residence. Based on the text of RPAPL § 1304, read as a whole, such a borrower is nevertheless entitled to pre-foreclosure notice. Accordingly, Plaintiff's allegation that it did not need to serve notice on Stern before instituting foreclosure proceedings against the Property is insufficient to state a foreclosure claim under New York law.

12

## IV. CONCLUSION

For the reasons stated above, Defendant Isaac Stern's motion to dismiss (Dkt. 104) is GRANTED, and Plaintiff's complaint is DISMISSED without prejudice.

SO ORDERED.

Dated: Brooklyn, New York
June 27 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge